**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| DRW TEXAS LLC, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | **Civil No. 1:19-cv-00830-LY** |
| | § | |
| LUCAS MCGREW, an individual, | § | |
| | § | |
| Defendant/Counter-Plaintiff, | § | Jury Trial Requested |
| | § | |
| v. | § | |
| | § | |
| DRW HOLDINGS, LLC and | § | |
| JANE DOES and JOHN DOES 1-10 | § | |
| | § | |
| Third-party Defendant(s) | § | |
| | § | |

**DRW HOLDINGS, LLC'S MOTION TO EXCLUDE
LUCAS MCGREW'S EXPERT WITNESS ROY D. RECTOR**

Pursuant to Rule 702 of the Federal Rules of Evidence and this Court's Order dated November 8, 2021, Defendant DRW Holdings, LLC ("DRW Holdings") respectfully moves to exclude the testimony and opinions offered by Plaintiff Lucas McGrew's ("McGrew") expert witness, Roy D. Rector ("Rector"), as follows:

## I.     BACKGROUND

DRW Texas LLC ("DRW Texas," and collectively with DRW Holdings, "DRW") employed McGrew as a Senior Software Developer until he tendered his resignation on August 7, 2019 having accepted an offer of employment with a direct competitor. Dkt. 1 ¶¶ 3, 10-11, 29. Following McGrew's resignation, DRW's information technology security team ("DRW IT"), led by DRW's Chief Information Security Officer Ryan Glover ("Glover"), reviewed computer activity logs and Internet search histories associated with McGrew's DRW Texas-issued laptop

and workstation ("DRW Computers") as part of its standard offboarding procedures. *Id.* ¶¶ 4, 31. The review revealed that McGrew had conducted research about DRW's monitoring software's recording functionality and how to disable the software's functionality,[1] and that he did so on three separate occasions. Dkt. 1 ¶¶ 33-35; Ex. A (Glover 10/13/20 Decl.) ¶ 9. Further forensic analysis and review revealed that, during the times that the logger function was disabled due to McGrew running a "kill-stop" command on the logger progress, McGrew visited DRW's GitHub repositories containing DRW's highly confidential source code, as well as a non-DRW GitHub repository and a private Google cloud account, and there was evidence of a USB attachment to McGrew's workstation as well as two Bluetooth connections, including one on August 7, 2019 (the day McGrew resigned) at 1:53:33 AM CT. Dkt. 1 ¶¶ 39-41.

DRW IT created a forensic image of McGrew's DRW Computers on August 9, 2019. Ex. B (Crain Rpt.) ¶ 20; Ex. E (HOLDINGS_002006-07). Prior to imaging, DRW IT briefly booted both of McGrew's DRW Computers to conduct a targeted review of forensic artifacts and put both computers into Apple's "Target Disk Mode," "which involves starting the computer and then, instead of allowing the operating system to boot, using a special keystroke to put the device into a mode where it behaves like an external hard drive." Ex. B (Crain Rpt.) ¶¶ 13, 19.

McGrew retained Rector to "review the procedures and actions of DRW as they relate to the forensic imaging analysis of these computers." Ex. C (Rector Dep.) at 59:19-60:5; *see also id.* at 62:11-19. Rector admits that his opinions offered in this case are limited to DRW's review of the forensic images; he has no opinion regarding the investigation, taken as a whole, into McGrew's conduct prior to his resignation that preceded the filing of the Complaint. *See id.* at

---

[1] "ObserveIT" is the name of DRW's monitoring software; "logger" is the name of the recording agent within ObserveIT that captures screen recordings of the end-user's behavior.

62:11-19.[2] He further admits that, despite having been provided with the forensic images of McGrew's DRW Computers and verification logs in October 2021, he did not review them before preparing his two reports,[3] and only did so for the first time two days before his deposition for the limited purpose of confirming what Andrew Crain, DRW Holdings' rebuttal expert, said the images showed. Ex. C (Rector Dep.) at 10:7-13:13. His opinions are based entirely on his review of select case documents, "depositions and declaration testimony," and a conversation with McGrew. *Id.* at 43:17-44:2, 119:2-120:4. Rector admits he has no specialized training that relates to review or interpretation of documents or testimony. *See id.* at 120:13-21. For example, he opines that Glover misinterpreted device connectivity artifacts, Ex. D (Rector Rpt.) ¶¶ 37, 39, but he admits that there were Bluetooth, Airdrop and Realtek card reader connections to McGrew's DRW Computers during the times that logger was disabled, and that his opinion regarding Glover's misinterpretation of these connections is based solely on his review of case documents. Ex. C (Rector Dep.) at 121:8-122:17; *see also id. at* 72:8-23.

Beyond merely offering his interpretation of undisputed evidence, Rector offers only two opinions, both of which are self-evident, irrelevant, and not helpful to the trier of fact: (1) that the basic first step to any forensic examination is forensic preservation of the data, and (2) it is *possible* that digital evidence may have been lost by DRW's booting McGrew's DRW Computers prior to forensically imaging the hard drives. Ex. D (Rector Rpt.) ¶¶ 11, 13. Importantly, Rector does not say there is any indicia that anything relevant was affected by DRW IT's booting of McGrew's DRW Computers and putting them in Target Disk Mode. *See* Ex. D (Rector Rpt.).

---

[2] For example, Rector testified that he has no opinion regarding DRW's review of the ObserveIT recordings, Ex. C (Rector Dep.) at 63:16-21, which show McGrew disabling the recording functionality on his DRW Computers multiple times and searching for the presence of a separate security/monitoring tool called "Carbon Black." Ex. B (Crain Rpt.) ¶ 30; Ex. A (Glover 10/13/20 Decl.) ¶ 9.

[3] Rector submitted his original report on October 15, 2021. On November 9, 2021, Rector provided an updated report that updated the date in the footer and corrected a typo in paragraph 44 (replacing "Glover" with "McGrewr" [*sic*]). *See* Ex. B (Crain Rpt.) ¶ 32; Ex. C (Rector Dep.) at 40:15-24.

For all of these reasons, and the reasons discussed below, Mr. Rector's opinions and assertions are unhelpful and unreliable and should be excluded.

## II.   LEGAL FRAMEWORK

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

This rule "imposes a special obligation upon a trial judge to ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (citation omitted) (excluding conclusory testimony as irrelevant).[4] With respect to reliability, the district court has "broad latitude" when deciding whether such testimony is reliable, and thus admissible, as well as when deciding how to test the testimony's reliability. *Kumho*, 526 U.S. at 141–42, 152.

---

[4] *See also, e.g.*, 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 702.02[5] (Mark S. Brodin, ed., 2d ed. 1997) (quoted in *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993)) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. Similarly, low probative value, or a total lack of it, will render proposed expert testimony unhelpful and, therefore, inadmissible under Federal Rule of Evidence 702.").

### III.   ARGUMENT

**A.   Rector's testimony should be excluded under Rule 702 because it fails to assist the trier of fact.**

Rector's report has two general components. First, he offers two generic, self-evident observations, which he fails to tie to any relevant fact in dispute: (1) "that the basic first step to any forensic examination … [is] forensic preservation of the data," and (2) it is possible that digital evidence may have been lost by DRW's booting McGrew's DRW Computers prior to forensically imaging the hard drives. Ex. D (Rector Rpt.) ¶¶ 11, 13. Second, he interprets testimony and documents from this case. *See, e.g.*, *id.* ¶¶ 11, 16-27, 32, 33, 35, 38, 41-52. Both components of his proposed testimony should be excluded under Rule 702 as unhelpful to the trier of fact.

**1.   Rector's generic testimony about "best practices" for forensic preservation and the possible consequences of failure to strictly adhere to such practices is not helpful to the trier of fact.**

Rector's testimony concerning DRW IT's alleged failure to adhere to forensic preservation "best practices" by booting McGrew's DRW Computers prior to creating a forensic image fails to aid the trier of fact for two primary reasons. First, the principle or concept that "best practices" requires that a computer be forensically preserved (imaged) before any investigative tasks are performed is not so complex as to require expert explanation. Indeed, as Rector himself admits, "[i]t is *common knowledge* that, if an investigator simply operates a computer [prior to imaging] he will be adding, changing and possibly deleting information that could be responsive to the investigation." Ex. D (Rector Rpt.) ¶ 30 (emphasis added). Allowing Rector to testify as to common and accessible knowledge would directly conflict with the requirements of *Daubert*, since "[a]n expert's testimony will only aid the trier of fact if the evidence about which he or she testifies concerns matters that are beyond the understanding of the average lay person." *Grimes v. Wal-Mart Stores Tex., LLC*, 2012 WL 12883080, at *4 (W.D. Tex. Jan. 23, 2012) (internal citation omitted) (granting motion to exclude expert on grounds that testimony would not aid the trier of

fact; testimony was not so complex as to require expert explanation); *Neely v. PSEG Tex., LP*, MO-10-CV-030, 2012 WL 12877923, at *3 (W.D. Tex. May 29, 2012) (same).

In addition to being common knowledge, Rector's opinion that best practices with respect to preservation and examination of digital forensic evidence dictate that a computer be imaged before any investigative tasks are performed is not disputed. *See, e.g.*, Ex. D (Rector Rpt.) ¶ 27 (Glover "appears to understand the first, and most significant element of a forensic analysis, is preserving the electronic evidence by forensic preservation"); Ex. B (Crain Rpt.) ¶ 11; Ex. F (Glover 10/27/21 Dep.) at 107:8-23. It is well established that expert testimony that "simply states undisputed facts does not serve its intended purpose of helping the jury make factual determinations." *See Carr v. Montgomery Cnty., Tex.*, 2015 WL 5838862, at *9 (S.D. Tex. Oct. 7, 2015); *see also U.S. v. Certantes-Perez*, 2012 WL 6155914, at *3 (W.D. Tex. Dec. 11, 2012) (redundant expert testimony that merely confirms facts of which the jury is already adequately aware may be excluded). Thus, Rector's recitation of undisputed facts from his review of case documents does nothing to aid the jury. *See Grimes*, 2012 WL 12883080, at *4 (excluding expert testimony that "offer[ed] nothing more than what Plaintiff's counsel can assert in closing arguments, introduce through exhibits, or elicit in the examination of lay witnesses").

For the same reason, Rector's generic testimony that it is *possible* that some digital evidence may have been lost by DRW IT booting McGrew's DRW Computers prior to forensically imaging them is not helpful to the trier of fact. Again, as Rector himself acknowledges, it is "common knowledge that, if an investigator simply operates a computer he will be adding, changing and possibly deleting information that could be responsive to the investigation." Ex. D (Rector Rpt.) ¶ 30. Further, nothing in Rector's reports or testimony suggest that any *relevant* data has actually been lost, or that DRW ultimately relied on data that had been modified by DRW IT's

actions when making decisions about how to address McGrew's activities. The *only* data that Rector identifies as having been lost or modified is certain file system "last accessed" date/time stamps, which were updated on August 8, 2019 when DRW IT placed McGrew's DRW Computers into Apple Target Disk Mode. *See id.* ¶ 34. But Rector does not dispute that, as Crain explains in his report, "this date/time stamp value cannot be used, by itself, to conclusively confirm that a file has *not* been copied or opened," or "to establish conclusions about which files on a computer *were* copied and/or opened." Ex. B (Crain Rpt.) ¶ 14.[5] Nor does Rector dispute that "it is more accurate and appropriate to answer those questions by relying on separate forensic artifacts, such as the Mac OSX Spotlight 'last opened' value, the database associated with Microsoft Office that shows what documents were opened and when, various Mac OSX 'MRU' values, and the file system metadata/contents of any storage locations that documents may have been copied to"—all of which remain available on McGrew's DRW Computers for analysis and were unaffected by DRW IT's booting the computers prior to forensically imaging them. *Id.* ¶ 15.

In other words, to the extent information regarding file access dates is at all relevant to this case (and it is not), that evidence exists in unaltered form in separate forensic artifacts on McGrew's DRW Computers, which Rector failed to review prior to preparing his two reports in this matter.

## 2. Rector's testimony that merely summarizes other witnesses' testimony and documents is not helpful to the trier of fact.

The remainder of Rector's report merely interprets (and in some cases, misinterprets) other witnesses' testimony and documents, evidence that the jury is equally able to evaluate. For example, Paragraph 11 of Rector's report (in the "Summary of Opinions" section) merely

---

[5] Rector himself suggests only that "[f]ile access dates could have been helpful in determining what files Mr. McGrew … *may have accessed* prior to forensic imaging." Ex. D (Rector Rpt.) ¶ 34. In other words, Rector does not even suggest that this evidence would have any exculpatory value.

summarizes Glover's deposition and declaration testimony. *See* Ex. D (Rector Rpt.) ¶ 11. This recitation of testimony does not constitute an opinion, much less an opinion that requires scientific, technical, or other specialized knowledge.

Rector also concludes, based solely on his review of case documents and testimony, that "Glover misinterpreted device connectivity artifacts," and that this misinterpretation "led to false accusations that Mr. McGrew could have, or did, appropriate company information and left the company with that information stored on external storage device(s)." *See id*. ¶¶ 14, 54; Ex. C (Rector Dep.) at 72:8-73:9, 121:8-122:17. Once again, however, this conclusion does nothing to aid the trier of fact as it does not require any specialized knowledge or expertise.

It is well-established that an expert witness who "parrots" out-of-court statements of others as his testimony "is not giving expert testimony; he is a ventriloquist's dummy." *Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017) (excluding expert opinion because expert "brings nothing to the table by way of pertinent expertise . . . than any person who has looked through the records of this case"). Experts should not, then, be permitted to give opinions that simply reiterate what the lawyers can and do offer in argument. *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233, 1235 (5th Cir. 1986) (excluding expert testimony as "so abusive . . . and so removed from any area of demonstrated expertise"). Such testimony is not helpful to the trier of fact. *See, e.g.*, *Deaf Interpreter Servs. v. Webbco Enters., L.L.C.*, No. 5:13-867-RCL, 2015 WL 11565191, at *4-5 (W.D. Tex. Feb. 11, 2015) (excluding expert opinions because the expert "is in no better position to evaluate the evidence and make these findings than the jury is"). This is especially true in this case, where Rector has admitted that he is a "digital forensic examiner," "not a document forensic guy." Ex. C (Rector Dep.) at 120:13-21.

**B.      Rector's testimony is not based on sufficient facts or data.**

Rector should also be excluded for the additional reason that his opinions are not based on

sufficient facts or data—he did not conduct an analysis of the forensic images of McGrew's DRW

Computers, which renders his opinions unreliable and inadmissible. His report is replete with

assumptions and speculation as to what *could* result from DRW IT's methodology, but he fails to

make an assessment regarding the actual results. Instead, Rector's opinions are based merely on

deposition testimony, declarations, and a handful of documents.

Rector admitted at his deposition that, although he requested and received the forensic

images of McGrew's DRW Computers in October 2021, he did not review them in preparation of

his two reports and, instead, reviewed them for the first time two days before his deposition. Ex. C

(Rector Dep.) at 13:1-13, 44:3-16, 45:6-9, 71:5-8, 72:8-11. Rector further testified that the only

materials he reviewed in forming his opinions were Glover's depositions and declarations, Mike

Wilkerson's deposition, and an email between McGrew and Mike Wilkerson. *Id*. at 43:13-23. And

while he did eventually review the forensic images two days before his deposition, he did not

conduct an independent review of the images, but merely reviewed them to confirm what Crain

said about the images in his rebuttal report. *Id*. at 10:7-13:13.

This is hardly the "sufficient facts or data" that Rule 702 requires. *See* FED. R. EVID. 702(a).

Rector's failure to independently review the forensic images of McGrew's DRW Computers, or

any of the other technical evidence in the case, renders his testimony regarding DRW's

investigation patently inadequate and unreliable. *See, e.g.*, *Stinson Air Ctr., LLC v. XL Specialty

Ins. Co.*, No. SA-03-CA-61-FB, 2005 WL 5979096, at *3 (W.D. Tex. July 8, 2005) (excluding

expert opinion as "unorthodox and unreliable" because "the opinions given are based solely upon

representations of a party . . . without any independent review of ordinary sources of financial

analysis"); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (affirming

exclusion of expert where the expert failed to conduct any independent examination of the evidence); *Prepaid Wireless Servs., Inc. v. Sw. Bell Wireless, Inc.*, No. M-00-302, 2002 WL 34367328, at *2 (S.D. Tex. July 23, 2002) (finding that "the expert's failure to independently analyze the [opposing party's] figures to be a fatal flaw to the expert's methodology and reliability" and rendered the results unreliable).[6]

## IV.   CONCLUSION

For the foregoing reasons, DRW Holdings respectfully requests that the Court grant this Motion and exclude the testimony of Roy D. Rector.

Dated:  January 20, 2022                    Respectfully submitted,


                                            /s/ Ann Marie Painter
                                            Ann Marie Painter
                                            State Bar No. 00784715
                                            AMPainter@perkinscoie.com
                                            Katherine E. May
                                            State Bar No. 24116732
                                            KMay@perkinscoie.com
                                            **PERKINS COIE LLP**
                                            500 N. Akard, Suite 3300
                                            Dallas, TX 75201
                                            Telephone: (214) 965-7700
                                            Facsimile: (214) 965-7799

                                            Sherrard Lee Hayes
                                            **WEISBART SPRINGER HAYES, LLP**
                                            212 Lavaca Suite 200
                                            Austin, Texas 78201


                                            **ATTORNEYS FOR DRW HOLDINGS, LLC**

---

[6] *See also, e.g.*, *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 958 (E.D. Mich. Aug. 16, 2018) (excluding an expert report where the expert never tested or inspected the actual software system); *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 WL 1767097, at *4-5 (S.D. Fla. May 2, 2014) (excluding expert testimony where the expert based his report on a handbook rather than his personal inspection of the defendant's systems); *Mohamed v. Am. Motor Co., LLC*, No. 15-23352-CIV, 2017 WL 4310757, at *3-4 (S.D. Fla. Sept. 28, 2017) (excluding expert testimony where the expert did not personally test or use the defendant's software).

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that counsel for DRW conferred with opposing counsel regarding the substance of this motion on the 20th day of January 2022. Opposing counsel is opposed to this motion. Therefore, the parties were unable to reach a resolution, thus requiring the filing of this opposed motion.

*/s/ Ann Marie Painter*
Ann Marie Painter

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 20, 2022, I electronically served the foregoing on all counsel of record via email as follows:

David M. Prichard
PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
E-mail: dprichard@prichardyoungllp.com


*/s/ Ann Marie Painter*
Ann Marie Painter